UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XENIYA YUNANOVA,

        Case No. 2:10-cv-14156

   Plaintiff,        Hon. Lawrence P. Zatkoff

v.

BAC HOME LOANS SERVICING, LP, and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS

   Defendants.
_____/

**OPINION AND ORDER**

**AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 10, 2012.**

**PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss and/or for Summary Judgment [dkt 18]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendants' Motion is GRANTED.

**II. BACKGROUND**

On September 28, 2010, Plaintiff filed suit in Oakland County Circuit Court, and Defendants removed the case to this Court on October 18, 2010. Plaintiff's Complaint alleges that she was denied the right to a mortgage modification meeting, pursuant to Mich. Comp. Laws

§ 600.3205b, after defaulting on her mortgage. Plaintiff also alleges that Defendants violated the terms of the Home Affordable Modification Program ("HAMP") by not notifying Plaintiff of her alleged non-compliance with a HomeSaver Payment Forbearance Agreement ("Forbearance Agreement"), and for allegedly backing out of a verbal approval of her for a loan modification. Defendant BAC Home Loan Servicing, LP ("BAC") filed a counterclaim seeking, in the alternative only, judicial foreclosure against Plaintiff. Plaintiff failed to file an answer and default has been entered against her on the counterclaim.

### A. LOAN

On or about January 13, 2003, Plaintiff obtained a loan in the principal amount of $254,000.00 from America's Wholesale Lender ("AWL"), evidenced by a promissory note (the "Note") in favor of AWL, and secured by a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS acted as mortgagee and nominee for AWL and its successors and assigns. Under the Note, Plaintiff was required to make payments in the amount of $1,584.63 due on the first day of each month. The mortgaged property (the "Property") is commonly known as 2024 Dorchester Drive, Walled Lake, Michigan.

After origination of Plaintiff's loan, AWL sold and assigned its right to collect payments due under the Note (the "Indebtedness") to Countrywide Home Loans, Inc. ("Countrywide"). Countrywide later sold the Indebtedness to the Federal National Mortgage Association ("Fannie Mae"). Countrywide remained the servicer of the loan. Countrywide later merged with BAC, which is the current servicer.

### B. PLAINTIFF'S DEFAULT

Plaintiff defaulted under the Note and the Mortgage in early 2009, as follows:

    a) Plaintiff was more than 6 weeks late making the payment due February 1, 2009, BAC received that payment on March 16, 2009;

    b) Plaintiff was more than 10 weeks late making the payment due March 1, 2009, BAC received that payment on May 15, 2009;

    c) Plaintiff was more than 10 weeks late making the payment due April 1, 2009, BAC received that payment on June 15, 2009.

Additionally, Plaintiff does not dispute that she defaulted on her loan. In July of 2009, BAC initiated foreclosure proceedings.

### C. FORBEARANCE AGREEMENT

On or about August 1, 2009, BAC sent Plaintiff a Forbearance Agreement. The Forbearance Agreement provided that: (i) BAC would forbear from foreclosure activity for no more than 6 months, provided that Plaintiff made payments of $871.55 on the first day of each month starting in September, 2009; and (ii) if Plaintiff defaulted under the terms of the Forbearance Agreement, the Forbearance Agreement would terminate and foreclosure activity would immediately resume. The Forbearance Agreement also provided that "[BAC] is not obligated or bound to make any modification of the Loan Documents or provide any other alternative resolution of [Plaintiff's] default under the Loan Documents."

Plaintiff defaulted under the Forbearance Agreement by failing to make timely payments. BAC received payments from Plaintiff in the amount of $871.55 as follows:

    a) On September 17, 2009 (due September 1, 2009);

    b) On October 19, 2009 (due October 1, 2009);

    c) On November 10, 2009 (due November 1, 2009);

    d) On December 21, 2009 (due December 1, 2009);

    e) On January 21, 2010 (due January 1, 2010);

    f) On February 17, 2010 (due February 1, 2010).

Plaintiff acknowledges that the first payment under the Forbearance Agreement was due September 1, 2009, but argues that she made her first payment in August, 2009, in the amount of the regular mortgage payment, and thus was not late in making payments under the Forbearance Agreement.

After the Forbearance Agreement expired by its terms, Plaintiff failed to resume making payments in the amount required under the Note and the Mortgage—$1,584.63.  BAC also made the following payments for property taxes for which Plaintiff was liable:

a) $3,181.78 on December 30, 2009;

b) $2,023.66 on August 5, 2010; and

c) $821.63 on December 9, 2010

Defendants state that Plaintiff's failure to make these tax payments constitute an additional default of her loan.

### D.  BAC RESUMES FORECLOSURE PROCEEDINGS

Following Plaintiff's default under the Forbearance Agreement, BAC resumed foreclosure proceedings.  BAC's designated agent, Trott & Trott, P.C. ("Trott"), served Plaintiff with the necessary disclosures and a list of housing counselors as required under Mich. Comp. Laws § 600.3205a(3).  On July 30, 2010, BAC published the foreclosure notice. No housing counselor contacted Trott to request a meeting to negotiate a possible modification of the Mortgage within the time allowed under Mich. Comp. Laws § 600.3205b(1).  Plaintiff claims that her counsel sent such a request to Trott via facsimile.  Trott, however, denies ever having received the request.

The foreclosure of the mortgage and sale of the Property was completed on September 28, 2010.  The redemption period expired six months later, on March 28, 2011.

4

### III. LEGAL STANDARD

**A. FED. R. CIV. P. 56(a)**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position

5

will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B. FED. R. CIV. P. 12(c)**

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court's review under Fed. R. Civ. P. 12(c) is the same as the review under Fed. R. Civ. P. 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Thus, the plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

## IV. ANALYSIS

Plaintiff argues that MERS's assignment to BAC was invalid. Notwithstanding the validity of the assignment, Plaintiff also asserts that BAC denied her the right to a modification meeting under Mich. Comp. Laws § 600.3205b, and that BAC violated the Home Affordable Modification Program ("HAMP"). The Court will address Plaintiff's arguments in turn.

**A. MERS'S ASSIGNMENT TO BAC**

Plaintiff challenges BAC's authority to foreclose by advertisement on two fronts. First, Plaintiff contests whether MERS was ever properly assigned rights under the Mortgage, including the right to foreclose by advertisement. Alternatively, Plaintiff argues that even if MERS was properly granted such rights, MERS's purported assignment of the rights to BAC was invalid.

*1. Assignment to MERS from AWL*

Plaintiff claims that MERS was never properly granted rights under the Mortgage because Defendant failed to establish the existence of valid assignments between the original lender, AWL, and its successors, Countrywide and Fannie Mae. As an initial matter, the Court notes that these claims appear nowhere in Plaintiff's two-count Complaint, in which Plaintiff raises only her purported right to a modification meeting, and alleged violations of HAMP by Defendants. Notwithstanding Plaintiff's failure to adequately state this claim, the Court finds that Plaintiff's arguments must nevertheless fail.

The state and federal courts of Michigan have widely rejected similar arguments challenging the validity of the chain of title, especially when the challenging party is not privy to the challenged assignments. *See Residential Funding Co., LLC v. Saurman,* 490 Mich. 909, (2011) (finding that that " 'the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security' ") (quoting *Arnold v. DMR Fin.,* 448 Mich. 671, 532

7

(1995)); *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC,* No. 10–1782, 399 F. App'x 97, 102 (6th Cir. 2010) (rejecting arguments that a defective or flawed assignment corrupts the chain of title because, among other reasons, "a litigant who is not a party to an assignment lacks standing to challenge that assignment.") (internal quotation marks and citations omitted), *cert. denied*, ___ U.S. ___, 131 S.Ct. 1696, 179 L.Ed.2d 645 (2011); *Jarbo v. BAC Home Loan Serv.,* No. 10–12632, 2010 WL 5173825, *8 (E.D. Mich. Dec.15, 2010) (same). As such, Plaintiff, as a non-party to the assignments in question, lacks standing to challenge such assignments as a basis of invalidating BAC's foreclosure.

  *2. Assignment From MERS to BAC*

Plaintiff theorizes that because MERS lacked authority to foreclose by advertisement, it therefore could not assign such authority to BAC. In Plaintiff's lone citation to relevant case law, she appears to rely upon *Residential Funding Co. LLC v. Saurman, et al.*, 292 Mich. Ct. App. 321 (Apr. 21, 2011), to support her claim that MERS is not authorized to foreclose by advertisement. In *Saurman*, the Michigan court of appeals held that MERS lacked the authority to foreclose by advertisement. The Michigan Supreme Court, however, reversed the court of appeals' ruling, finding that the court of appeals erroneously construed Mich. Comp. Laws § 600.3204(1)(d), and that MERS *is* statutorily authorized to foreclose by advertisement. *See Residential Funding Co., LLC v. Saurman,* 490 Mich. 909 (2011). Thus, to the extent that she relies on the court of appeals' ruling in *Saurman*, Plaintiff's argument fails as a matter of law.

  Next, Plaintiff argues that because BAC was not the original mortgagee, a record chain of title must be established evidencing BAC's right to foreclose, and that no such chain of title has been shown by Defendants. Plaintiff's arguments are, at best, questionable, and appear to be based on no applicable law known to the Court.

8

Michigan law provides:

> If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

Mich. Comp. Laws § 600.3204(3). First, the Mortgage clearly declares MERS the mortgagee.[1] Also pursuant to the Mortgage, Plaintiff granted the Property and power of sale to MERS and its successors and assigns.[2] The mortgage also specifically grants MERS the right to foreclose.[3] MERS then executed a document assigning its these rights under the Mortgage to BAC. *See* dkt 21, ex. 1. Thus, a record chain of title clearly exists, resulting in BAC's right to foreclose.

Additionally, this conclusion is supported by the Michigan court of appeals' decision in *Bakri v. Mortgage Electronic Registration System,* 2011 WL 3476818 (Aug. 9, 2011). In challenging the validity of his mortgage foreclosure, the plaintiff in *Bakri* claimed that MERS's assignment of the mortgage to the foreclosing bank, Wells Fargo, was null and void because MERS was not the lender. The court of appeals rejected this argument, finding that the mortgage gave MERS the power to assign it. Pursuant to Mich. Comp. Laws. § 600.3204(3), MERS assigned the mortgage to Wells Fargo and Wells Fargo commenced foreclosure. Just as in *Bakri,* Plaintiff in this case authorized MERS's assignment to BAC, based on express language in the mortgage.

As such, Plaintiff's arguments challenging MERS's authority to foreclose, and whether MERS may assign that authority, both fail as a matter of law.

---

[1] "MERS is the mortgagee under this [mortgage] . . . acting . . . as a nominee for [AWL] and [AWL's] successors and assigns."

[2] "[Plaintiff] does hereby mortgage, warrant, grant and convey to MERS . . . and to the successors and assigns of MERS, with power of sale, the [property at issue in this case]."

[3] "MERS . . . has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument."

9

### B. FAILURE TO SCHEDULE A MEETING (COUNT I)

Plaintiff argues that BAC failed to schedule a meeting with her pursuant to Mich. Comp. Laws § 600.3205b. According to § 600.3205b:

> A borrower who wishes to participate in negotiations to attempt to work out a modification of a mortgage loan **shall contact a housing counselor** from the list provided under section 3205a within 14 days after the list is mailed to the borrower. Within 10 days after being contacted by a borrower, a housing counselor shall inform the person designated under section 3205a(1)(c) in writing of the borrower's request

(emphasis added). Plaintiff argues that she sent a request for a meeting, through counsel, to Trott on August 6, 2010. According to Plaintiff, she was not required to send such a request through a housing counselor, and therefore Defendant's failure to provide her a meeting violated § 600.3205b. Plaintiff's argument centers on the issue of whether the request for mediation allegedly submitted to Trott could have been made by Plaintiff's attorney rather than a housing counselor. This argument, however, is misplaced.

The plain language of § 600.3205b clearly indicates that to be granted a mediation meeting, Plaintiff was required to at least *contact* a housing counselor from the list provided within 14 days after the list was mailed to the her. Plaintiff has not averred that she contacted a housing counselor from the list provided, and does not allege that a housing counselor selected from that list informed Trott of Plaintiff's request for a meeting. Moreover, neither Plaintiff nor Plaintiff's counsel has claimed that Plaintiff's counsel is a housing counselor appearing on the list provided under § 600.3205a. Therefore, Plaintiff has failed to state an adequate claim with respect to Count I of the Complaint.

### C. FAILURE TO ABIDE BY HAMP GUIDELINES (COUNT II)

Plaintiff also alleges that BAC violated the Home Affordable Modification Program ("HAMP"). This claim fails because, as widely held by Michigan and federal courts, there is no

10

private right of action under HAMP. *See, e.g., Hart v. Countrywide Home Loans, Inc.,* 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) (quoting *Aleem v. Bank of America,* 2010 WL 532330 at *4 (C.D.Cal. Feb.9, 2010)) ("[A]ssuming Plaintiff is eligible for modification (which she is not) and assuming that the Lending Statutes impose a duty on Defendant to modify Plaintiff's mortgage (which they do not), the statutes do not create a private right of action under which Plaintiff may seek relief. 'There is no express or implied right to sue fund recipients ... under TARP or HAMP.' ").  Because there is no right to sue under HAMP, Plaintiff has failed to state a valid claim with respect to Count II of the Complaint.

    D. COUNTERCLAIM

Because the Court shall grant Defendants' Motion with respect to the issues discussed above, the Court need not address Defendants' Counterclaim, offered in the alternative.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendants' Motion to Dismiss and/or for Summary Judgment [dkt 18] is GRANTED

    IT IS SO ORDERED.

Date:   February 10, 2012

                                             s/Lawrence P. Zatkoff  
                                             LAWRENCE P. ZATKOFF  
                                             U.S. DISTRICT JUDGE